**[ORAL ARGUMENT NOT SCHEDULED]**

**Nos. 25-5144, 25-5145**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————

PATSY WIDAKUSWARA, *et al.*,

Plaintiffs-Appellees,

v.

KARI LAKE, *et al.*,

Defendants-Appellants.

————————————

MICHAEL ABRAMOWITZ, *et al.*,

Plaintiffs-Appellees,

v.

KARI LAKE, *et al.*,

Defendants-Appellants.

————————————

## RESPONSE TO EMERGENCY PETITION FOR
## REHEARING EN BANC

————————————

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY
ABIGAIL STOUT
  *Attorneys*
  *Civil Division, Room 7215*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-1838*
  *daniel.tenny@usdoj.gov*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.    Parties

In *Widakuswara*, plaintiffs are Patsy Widakuswara; Jessica Jerreat; Kathryn Neeper; John Does 1-4; Reporters Sans Frontieres; Reporters Without Borders, Inc.; American Federation of State, County and Municipal Employees; American Federation of Government Employees; American Foreign Service Association; and Newsguild-CWA. Defendants are Kari Lake, in her official capacity as Senior Advisor to the Acting CEO of the U.S. Agency for Global Media; Victor Morales in his official capacity as Acting CEO of the U.S. Agency for Global Media; and the United States Agency for Global Media. Reporters Committee for Freedom of the Press was granted leave to file an amicus brief.

In *Abramowitz*, plaintiffs are Michael Abramowitz, in his official capacity as Director of Voice of America; Anthony Michael Labruto; J. Doe 1; and J. Doe 2. Defendants are Kari Lake, in her official capacity as Senior Advisor to the Acting CEO of the U.S. Agency for Global Media; Victor Morales in his official capacity as Acting CEO of the U.S. Agency for Global Media; and the United States Agency for Global Media. Reporters Committee for Freedom of the Press and Former U.S. Foreign Policy and

National Security Officials and Other Experts on Public Diplomacy both moved for leave to file amicus briefs, and their motions are still pending as of April 25, 2025.

### B.    Rulings Under Review

Appellants have appealed the memorandum opinion and the orders granting plaintiffs' motion for a preliminary injunction in *Widakuswara. v. Lake*, No. 25-1015 (D.D.C.), Dkt. Nos. 98, 99, and *Abramowitz v. Lake*, No. 25-887 (D.D.C.), Dkt. No. 29.

### C.    Related Cases

This case has not previously been before this Court. There are four other related cases currently pending in the United States District Court for the District of Columbia. *See RFE/RL, Inc. v. Lake*, 25-799 (D.D.C.), on appeal No. 25-5158; *Open Technology Fund v. Lake*, 25-840 (D.D.C.); *Middle East Broadcasting Networks, Inc. v. Lake*, 25-966 (D.D.C.), on appeal No. 25-5151; *Radio Free Asia v. Lake*, 25-907 (D.D.C.), on appeal No. 25-5150.

*/s/ Daniel Tenny*
Daniel Tenny

### INTRODUCTION

This case presents a fundamental mismatch between plaintiffs' legal claims and the relief ordered.  Plaintiffs sought, and obtained, an injunction requiring the U.S. Agency for Global Media to carry out its statutory mandate to provide Voice of America programming.  The government has not sought a stay of that aspect of the district court's order.  But the government sought, and obtained, a stay of the further order by the district court that intrudes on the agency's authority to manage its own personnel in carrying out that statutory mandate, and others.  Plaintiffs now urge the full Court to vacate that stay.  But their arguments all focus on the need for an injunction to restore Voice of America programming, which is not currently before the Court.

In their petitions, plaintiffs repeatedly contend that their claims and relief revolve around the alleged dismantling and shutting down of Voice of America.  But they fail to explain how the relief ordered—the reinstatement of *all* employees and contractors of the U.S. Agency for Global Media—is justified by that claim.  Indeed, the Agency has moved to get Voice of America programming back on air despite the partial stay granted by the panel.  The stayed portion of the district court's order acts to

impede Agency operations and discretion about which particular personnel are required to carry out its statutory mandates.  The order has no legal justification and would cause profound harm if the stay were lifted.

The petition also presents no basis for reinstating the funding of two entities who are not parties to this case and who are pursuing their own claims, which the government has addressed separately.

## STATEMENT

The government appealed two separate cases—*Abramowitz v. Lake* and *Widakuswara v. Lake*—because the district court ordered substantially the same relief in both and because plaintiffs moved in each case for emergency injunctive relief to stop the alleged "dismantling" and "shut down" of Voice of America and the Agency.  The only claims that the district court resolved involve alleged statutory violations (which the district court construed as justiciable under both the Administrative Procedure Act ("APA") and the Take Care Clause) and APA claims.

The *Widakuswara* case originated in the Southern District of New York, where the judge granted a temporary restraining order on March 28, 2025, preventing the Agency from taking any further action with respect to

2

its workforce and ordering restoration of the previously terminated grants.

That case was subsequently transferred to the District of Columbia, and on

April 22, 2025, the district court issued a preliminary injunction, ordering

the Agency to: "1) take all necessary steps to return [Agency] employees

and contractors to their status prior to the March 14, 2025 Executive Order

14238, 'Continuing the Reduction of the Federal Bureaucracy,' including by

restoring all USAGM employees and personal service contractors, who

were placed on leave or terminated, to their status prior to March 14, 2025;

2) restore the FY 2025 grants with [Agency] Networks Radio Free Asia and

Middle East Broadcasting Networks such that international [Agency]

outlets can "provide news which is consistently reliable and authoritative,

accurate, objective, and comprehensive," 22 U.S.C. § 6202(a), (b), and to

that end, provide monthly status reports on the first day of each month

apprising the Court of the status of the defendants' compliance with this

Order, including documentation sufficient to show the disbursement to

[Radio Free Asia] and [Middle East Broadcasting Networks] of the funds

Congress appropriated; and 3) restore [Voice of America] programming

such that [the Agency] fulfills its statutory mandate that [Voice of America]

3

'serve as a consistently reliable and authoritative source of news,' 22 U.S.C. § 6202(c)."  Stay Mot. Add. 38.

On the same day, the district court entered a preliminary injunction in *Abramowitz*, concluding that the relief in *Widakuswara* "encompasses" the relief requested in *Abramowitz* but granting the preliminary injunction so that *Abramowitz* could be considered "alongside *Widakuswara* for the purposes of appellate review."  Stay Mot. Add. 40, 42.

The government filed a notice of appeal in each case on April 24, 2025, and sought a partial stay pending appeal.  After issuing an administrative stay, the panel stayed the cases, concluding that the district court likely lacked jurisdiction over the Agency's personnel actions and likely lacked jurisdiction to restore the grantees' grants.  Op. 2, 4.

## ARGUMENT

I.    **En Banc Review Is Not Warranted as to the Reinstatement of all the Agency's Employees and Contractors**

i.    *The Government is Likely to Succeed on the Merits*

1. The district court fundamentally erred by issuing broad relief untethered to particular plaintiffs or claims.  The disconnect is evident from plaintiffs' papers.  They repeatedly challenge the "dismantling" of

Voice of America—not employment actions. *See, e.g.*, *Widakuswara* Pet. 10 ("This is not a case about 'personnel actions.'"); *see id.* at 13. Nonetheless, the relief at issue here addresses only personnel actions. The district court provided no explanation for why reinstating all Agency employees or contractors was appropriate to address plaintiffs' claims that Voice of America was being dismantled or that the Agency was not able to comply with its statutory mandates. Determining appropriate personnel levels to comply with the Agency's statutory mandates is committed to the Agency's sound discretion.

In order for the district court's ordered remedy to be appropriate, the district court would have had to implicitly find that the pre-March 14 status for all Agency employees and contractors is required for the Agency to comply with its statutory mandates and to operate Voice of America. But that is self-evidently not true; the Agency can plainly carry out its statutory mandate with fewer, or different, staff. And it is in any event impermissible for the district court to make that call, which is committed to Agency discretion.

Plaintiffs argue that the panel opinion "fails to grapple with the fact that Plaintiffs 'asked the district court to revive and protect . . . no more

5

than what Congress prescribed.'" *Widakuswara* Pet. 14 (quoting Dissent 8). But that is the heart of the problem: The district court did not protect "no more than what Congress prescribed"; it went much farther. Congress did not prescribe that every employee and contractor at the Agency maintain the employment status that they held before March 14. What Congress prescribed was that the Agency carry out certain functions, but Congress afforded the Agency flexibility to determine how to do so. An order that goes well beyond requiring compliance with the statutory mandate that was allegedly violated is improper, as it would install the court as an overseer of the Agency's day-to-day operations. *See Dayton Bd. of Ed. v. Brinkman*, 433 U.S. 406, 418-19 (1977) (concluding there was a "disparity between the evidence of constitutional violations and the sweeping remedy finally decreed" and that it was "clear that the presently mandated remedy cannot stand upon the basis of the violations found by the District Court").

2. The error of the district court's analysis—echoed by plaintiffs and the stay panel dissent—is underscored by the third element of the district court's order. At bottom, both plaintiffs and the dissent focus on the closure of Voice of America—not employment. *See, e.g.*, *Abramowitz* Pet. 5 ("Director Abramowitz's claims are not about personnel actions taken

6

against him, but about the actions Defendants have taken to close the agency that Abramowitz is statutorily charged with directing."); Dissent 5-6 ("The plaintiffs in this lawsuit challenge the evisceration of their jobs only insofar as it is the means by which they challenge defendants' unlawfully halting the work of Voice of America and shutting it down."), *quoted in Widakuswara* Pet. 10.  The relief requested by plaintiffs purports to be aimed at Voice of America operations.  *See, e.g.*, *Abramowitz* Pet. 6 (seeking "the undoing of Defendants' unlawful shuttering of [Voice of America]").  And the district court granted relief on that claim, ordering Voice of America to "restore [Voice of America] programming such that [the Agency] fulfills its statutory mandate that [Voice of America] 'serve as a consistently reliable and authoritative source of news,' 22 U.S.C. § 6202(c)."  Stay Mot. Add. 38.

Plaintiffs and the dissent are correct that to carry out that mandate, the Agency may need to take some personnel actions.  But that provides no justification for the district court to micromanage those personnel actions and to order personnel actions beyond those that the Agency determines are necessary or appropriate to carry out its statutory mandate.  The unstayed portion of the order requires the Agency to provide Voice of America programming—which the Agency has begun to do, in part by

7

bringing back some Voice of America employees, even while the employment portion of the order has been stayed.  But there is no basis for ordering the Agency to bring back staff that the Agency does not deem essential to carry out that mission.

3. Finally, the district court erred by ordering reinstatement of all employees and contractors without making any individualized assessment. As the panel explained, this Court has "long held that federal employees may not use the Administrative Procedure Act to challenge agency employment actions." *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir. 2009).  "Congress has instead established comprehensive statutory schemes for adjudicating employment disputes with the federal government."  Op. 3 (citing *e.g.*, 5 U.S.C. §§ 1204, 7121–22, 7701 (Merit Systems Protection Board); *id.* § 1214 (Office of the Special Counsel); *id.* § 7104 (Federal Labor Relations Authority); 22 U.S.C. § 4107 (Foreign Service Labor Relations Board); *id.* § 4136 (Foreign Service Grievance Board); 41 U.S.C. §§ 7103–05 (Civilian Board of Contract Appeals)).  And "[t]hese remedial schemes 'provide[] the exclusive procedures by which federal employees' may pursue employment- and contractor-related claims."  *Id.* (quoting *Am. Fed'n of Gov't Emps., AFLCIO v. Trump*, 929 F.3d

8

748, 755 (D.C. Cir. 2019)). "Federal employees may not circumvent [these statutes'] requirements and limitations by resorting to the catchall APA to challenge agency employment actions." *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009). "And that principle applies to a 'systemwide challenge' to an agency policy . . . just as it does to the implementation of such a policy in a particular case." *Nyunt v. Chairman, Broad. Bd. Of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009).

The dissent contends that the number of personnel decisions implicated by the district court's order precludes review under these statutory schemes. Dissent 4. But as the panel explained, "administrative agencies are not powerless to issue broad-reaching relief in large-scale personnel matters." Op. 3 n. 2. Accordingly, the "employees and contractors might have viable, discrete claims with respect to their individual personnel actions, [and] those claims must be pursued through other remedial channels." Op. 4.

The dissent and plaintiffs also contend that the statutory schemes do not provide relief to individuals who have "no connection to federal employment." *Widakuswara* Pet. 11. The real question that argument raises is why individuals with no connection to federal employment are entitled

9

to obtain relief that requires the reinstatement of particular federal employees and contractors.

Moreover, plaintiffs' and the dissent's conception of the district court's order cannot be reconciled with the district court's own characterization of its analysis as reviewing numerous discrete actions—a "slew" of them. Stay Mot. Add. 25. The district court engaged in no individualized inquiry of each employment action that could possibly justify unwinding all of them. It is thus understandable that plaintiffs and the dissent retreat to describing the district court's analysis as a review of a single action—the alleged "dismantling" of Voice of America or the Agency. But that framing runs headlong into the prohibition on programmatic challenges under the APA. As the panel explained, "plaintiffs may not use the APA to mount 'wholesale' challenges to an agency's 'entire program.'" Op. 4 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 893 (1990) (cleaned up)). The APA cause of action, like its sovereign-immunity waiver, provides for judicial review of "discrete agency actions." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); *see* 5 U.S.C. §§ 702, 704. "The 'dismantling' that plaintiffs allege is a collection of 'many individual actions' that cannot be packaged together and 'laid

10

before the courts for wholesale correction under the APA.'"  Op. 4 (quoting

*Nat'l Wildlife Fed'n*, 497 U.S. at 893.); *see also City of New York v. United States*

*Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019) (explaining that challenges to

"generalized grievances asking [courts] to improve an agency's

performance or operations" force courts to either "enter a disfavored 'obey

the law' injunction or to engage in day-to-day oversight of the executive's

administrative practices" and that "[b]oth alternatives are foreclosed by the

APA, and rightly so" (citation omitted)).

Contrary to plaintiffs' and the dissent's fears, channeling plaintiffs'

claims would not preclude meaningful judicial review.  For employees,

they can take advantage of the statutory scheme crafted by Congress.

Plaintiffs are also free at any time to bring challenges to discrete, final

agency action under the APA.  *See City of New York*, 913 F.3d at 431

(explaining that the prohibition on "broad programmatic attack[s] on the

government's operations" and that the "distinction between discrete acts,

which are reviewable, and programmatic challenges, which are not, is vital

to the APA's conception of the separation of powers" (quotation omitted)).

11

ii.   *The Remaining Factors Favor a Stay*

1.     The preliminary injunction harms the Agency's ability to control its own operations.  By requiring the Agency to reinstate *all* employees and contractors to their status before the March 14 Executive Order, the district court is requiring the Agency to employ particular personnel against its will and superintending its own judgment about requisite agency staffing—something it has no lawful basis to do.  The breadth of the court's order does not contemplate individualized determinations of the appropriateness of returning particular employees to work and does not account for the various costs associated with reinstating all employees and contractors.  In sum, the preliminary injunction inflicts an irreparable loss of control vested in the Agency and the President and, by extension, an irreparable harm on the public.

2.     On plaintiffs' side of the ledger, their alleged harms relate to the continued operations of Voice of America and functioning of the Agency—not to any need for the broad employment order that the district court issued.  But the district court's order requiring restoration of Voice of America programming is still in effect.  For any individual employment disputes, there is a currently available and proper forum set out by statute.

12

3.     Finally, the district court's order was premised on its view that the Agency should not be entirely shuttered but provides no basis for prohibiting the Agency from carrying out the Executive Order's directive that the Agency's "non-statutory components and functions" be eliminated and that its "performance of [its] statutory functions and associated personnel" be reduced to "the minimum presence and function required by law." Exec. Order No. 14,238, 90 Fed. Reg. 13043 (Mar. 14, 2025).  The Agency is entitled to carry out this Executive Order, and the public has an interest in permitting the President to take decisive action when it comes to setting his policy priorities for the Agency and its broadcasting networks. The court's injunction displaces and frustrates the President's decision about how to best address those issues, causing harm to the public.

iii.   *En Banc Review Is Not Warranted*

In any event, this case does not does not satisfy the stringent standard for review by the full Court.  The heart of plaintiffs' challenge is Voice of America operations and programming—not the overbroad order to indiscriminately reinstate all employees and contractors.  The district court's injunction requiring Voice of America programming is in full effect.

13

The en banc Court should not step in to revive an overbroad employment order disconnected to particular relief plaintiffs seek.

Plaintiffs reference *National Treasury Employees Union v. Vought*, No. 25-5091, *see, e.g.*, *Widakuswara* Pet. 13-14, but the panel there originally required that the agency reinstate employees necessary to the performance of the agency's statutory duties.  Here, the district court went much further, ordering reinstatement of *all* Agency employees and contractors, irrespective of whether they were required to carry out the Agency's statutory duties or not.  In any event, *National Treasury Employees Union* is scheduled for oral argument next week after full merits briefing, so this Court should decline en banc consideration of these cases in their current stay posture.  And plaintiffs' observation that the same panel that issued the stay at issue here later reinstated the district court's injunction in *National Treasury Employees Union* for reasons specific to that case underscores that the cases are distinguishable and do not present an intracircuit conflict that might give rise to a need for review by the full Court.

The timing on which plaintiffs seek relief underscores the inappropriateness of further review.  To the extent that there are issues

14

worthy of the full Court's attention, the Court would benefit from sufficient time to consider the issues and reach a decision that could provide guidance in future cases. There is no reason to issue an en banc ruling based on a highly expedited request from relief from a stay decision.

## II.    Rehearing Is Not Warranted as to the Restoration of the Grant Agreements

The Court should not address the Tucker Act arguments in these cases. The *Widakuswara* plaintiffs briefly raise the issue, but neither Radio Free Asia nor Middle East Broadcasting Networks is a plaintiff in these cases.[1] Although employees of Radio Free Asia, represented by a union, are plaintiffs, plaintiffs allege no connection to Middle East Broadcasting Networks. The district court's willingness to order payments to nonparties underscores its failure to grapple with the precise nature of the claims before it. And the *Abramowitz* plaintiffs completely disclaim seeking any contract or grant relief. *Abramowitz* Pet. 4 n.3 ("This lawsuit, unlike the

---

[1] RFE/RL, Inc. (commonly known as Radio Free Europe) is not covered by the district court's order at issue in these cases. *See* Stay Mot. Add. 38.

other three . . . does not involve grants so this petition does not address that portion of the Panel's decision.").

Radio Free Asia and Middle East Broadcasting Networks have each brought their own cases, which are pending before this Court. Although no further review of the panel's decision with regard to grants is warranted at all, to the extent this Court is inclined to consider such review, it should do so in those cases, brought by the grantees, rather than here.

If the Court does pass on the funding-based aspect of the district court's injunction it should conclude that the district court erred for the reasons stated in the panel opinion and the government's prior briefing, including the government's response to Radio Free Asia's, Middle East Broadcasting Networks', and Radio Free Europe's petitions for rehearing en banc. Any dispute over whether a grant was properly terminated is fundamentally an effort to force the government to "keep paying up" under a contract. *U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*, 2025 WL 763738, at *5 (D.D.C. Mar. 11, 2025). Because Congress vested the Court of Federal Claims with exclusive jurisdiction over such claims, the district court lacked "the authority to afford the 'drastic' emergency relief

that [plaintiffs] see[k]." *Id.* at *8 (quoting *F.T.C. v. Exxon Corp.*, 636 F.2d 1336, 1343 (D.C. Cir. 1980)).

## CONCLUSION

For the foregoing reasons, this Court should deny the petitions for en banc review.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney*
    *General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney*
    *General*

MARK R. FREEMAN

*s/ Daniel Tenny*
DANIEL TENNY
ABIGAIL STOUT
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7215*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-1838*
  *daniel.tenny@usdoj.gov*

MAY 2025

17

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit set out in the Court's order because it contains 3,237 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Book Antiqua 14-point font, a proportionally spaced typeface.


                                    *s/ Daniel Tenny*
                                    Daniel Tenny