# United States Court of Appeals
#### For The District of Columbia Circuit

_____

| | |
|---|---|
| **No. 25-5144** | **September Term, 2024** |
| | 1:25-cv-01015-RCL |
| | **Filed On:** May 28, 2025 |

Patsy Widakuswara, et al.,

    Appellees

    v.

Kari Lake, in her official capacity as Senior Advisor to the Acting CEO of the U.S. Agency for Global Media, et al.,

    Appellants

**No. 25-5145**

    1:25-cv-00887-RCL

Michael Abramowitz, in his official capacity as Director of Voice of America, et al.,

    Appellees

    v.

Kari Lake, in her official capacity as Senior Advisor to the Acting CEO of the United States Agency for Global Media, et al.,

    Appellants

**O R D E R**

Upon consideration of the May 22, 2025 order in the above-captioned cases, which indicated that statements concerning that order would follow at a later time,

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

**No. 25-5144**                                              **September Term, 2024**

attached are statements of Chief Judge Srinivasan and Circuit Judge Pillard.  Circuit Judges Millett, Pillard, Wilkins, Childs, Pan, and Garcia join in the statement of Chief Judge Srinivasan.

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:    /s/
Selena R. Gancasz
Deputy Clerk

SRINIVASAN, *Chief Judge*, respecting the denial of reconsideration en banc:

In arguing against en banc reconsideration of the panel's stay of provision (1) of the district court's preliminary injunction while these appeals are pending, the government relies on the continued operation of provision (3) of the preliminary injunction. *See* Gov't En Banc Resp. 1, 8–9. That provision, which remains unstayed, requires the government to restore Voice of America (VOA) programming so as to fulfill VOA's statutory mandate. *Id.* at 3–4. Although the government relies on the continued operation of provision (3), the government also asserts that the district court lacks any authority under that provision "to order personnel actions beyond those that the [government itself] determines are necessary or appropriate to carry out its statutory mandate." *Id.* at 7. The court's denial of en banc reconsideration of course should not be understood to accept or treat with the government's assertion in that regard. Rather, insofar as the issue may arise in further proceedings in the district court, that court presumably would consider it in the first instance.

PILLARD, *Circuit Judge*, respecting the denial of reconsideration *en banc*: Even as we deny further consideration of the stay order, I remain convinced that the panel should not have entered an emergency stay of the district court's preliminary injunction. *See Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *6-16 (D.C. Cir. May 3, 2025) (Pillard, J., dissenting). Yet the standard for the full court's intervention is unmet because nothing in the panel's stay order prevents the district court from enforcing the unchallenged prong 3 of the injunction, which requires defendants to "restore VOA programming such that USAGM fulfills its statutory mandate that VOA 'serve as a consistently reliable and authoritative source of news,'" as mandated by 22 U.S.C. § 6202(c). *Widakuswara v. Lake*, No. 25-cv-1015, 2025 WL 1166400, at *18 (D.D.C. Apr. 22, 2025). As the dissenting member of the emergency panel, I write briefly to provide context for the *en banc* court's action and explain how it squares with my understanding of the district court's remedial authority.

Plaintiffs challenged the decision to "shutter[] VOA and forc[e] it off the air" in contravention of "statutes which require that VOA continue producing and broadcasting news that meets high editorial standards." Abramowitz Compl. ¶ 122. The district court confirmed its own jurisdiction and held it likely that the agency acted arbitrarily under the APA in halting VOA's operation. *Widakuswara*, 2025 WL 1166400, at *11-14. Indeed, it was "hard to fathom a more straightforward display of arbitrary and capricious actions." *Id*. at *14. A panel of this court granted defendants' motion for an emergency stay without opining on the action's arbitrariness, however, because it deemed defendants likely to succeed on jurisdictional grounds. *See Widakuswara*, 2025 WL 1288817, at *2-3.

Given its holdings of likelihood that it has jurisdiction, and that the agency acted arbitrarily in shutting down VOA, the district court did not abuse its discretion when it provisionally

2

"set aside" that action, 5 U.S.C. § 706(2), by preliminarily enjoining the agency to revert to the pre-violation status quo, *Widakuswara*, 2025 WL 1166400, at *13-15. *Cf. Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83, 117 (D.C. Cir. 2020) ("Vacatur is the normal remedy when we are faced with unsustainable agency action.") (internal quotation marks omitted). Requiring an agency to undo an arbitrary action is standard fare.

The district court accordingly ordered reinstatement of employees and contractors to restore the *status quo ante*, thereby preventing irreparable harm to the plaintiffs and serving the public interest. VOA had stopped broadcasting, and its website had not been updated in over a month. *Widakuswara*, 2025 WL 1166400, at *3. The court found that the agency's action "dismantling [the] human infrastructure required to run USAGM [and] VOA" would "halt agency function in the short term and threaten the efficacy of the agency in the long-term." *Id*. at *16 (quoting March 28 TRO, *Widakuswara v. Lake*, No. 25-cv-02390 (S.D.N.Y. Mar. 28, 2025)). Once the panel stayed the preliminary injunction, approximately 584 of VOA's personal service contractors (97% of the total) received termination notices dated May 15 with effective dates between May 21 and May 30. Abramowitz Supp. Decl. (May 16, 2025) ¶¶ 1-2. Plaintiffs aver that, "if allowed to become effective," the termination of these personal service contractors "will make it impossible for VOA to carry out its daily operations." *Id.* ¶ 9.

Defendants have not challenged the district court's findings of irreparable harm, and their own claim of harm is unpersuasive. They assert that the district court has impeded their control over employment decisions and failed to account for the costs of restoring the VOA employees to work. Gov't En Banc Resp. 12. But the government cannot complain of

3

costs it imposes on itself through unlawful action. *See Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976). The balance of hardships therefore favors the plaintiffs. So, too, does the public interest: Congress established VOA and gave it an explicit statutory mandate to provide "reliable[,] authoritative, accurate, objective, and comprehensive" news. 22 U.S.C. § 6202(b)(1).

That brings us to the nub of the denial of *en banc* relief, which is whether the first prong of the district court's preliminary injunction was "mismatch[ed]" to the violation. Gov't En Banc Resp. 1. Under prong 1, the agency must "take all necessary steps to return USAGM employees and contractors to their status prior to the March 14, 2025, Executive Order 14238 . . . including by restoring all USAGM employees and personal service contractors, who were placed on leave or terminated, to their status prior to March 14, 2025." *Widakuswara*, 2025 WL 1166400, at *18. In my view, that provision was well tailored to the defendants' arbitrary and unlawful action.

First, the district court acted with full cognizance of and respect for the agency's discretion to decide, within legal bounds, how many employees and personal service contractors it needs to carry out lawful policy reform. As the court explained, "the injunction does not prevent USAGM from executing personnel decisions," or taking other actions regarding employee relations, contract negotiations, or contract terminations, "pursuant to its statutory mandate and in compliance with the APA." Order Denying Stay 5 & n.1, No. 25-cv-1015 (D.D.C. Apr. 25, 2025) [ECF No. 104] [hereinafter Order Denying Stay]. The court expressly disavowed fixing the previous staffing of VOA as the "benchmark for minimum statutory compliance." *Id.* at 5.

4

Second, given that the government had not proposed any narrower injunction, it is unclear what else the district court could have done. While "an injunction must be narrowly tailored to remedy the harm shown," "[t]hat principle . . . does not require district courts enjoining unconstitutional government policies to fashion narrower, ostensibly permissible policies from whole cloth" where, as here, the government has framed no alternative. *J.D. v. Azar*, 925 F.3d 1291, 1335 (D.C. Cir. 2019). The court is not required to guess what nonarbitrary policy the administration might adopt to restore VOA programming and fulfill the agency's statutory mandate.

Third, the government argues that the continued vitality of prong 3 of the preliminary injunction renders prong 1 fatally overbroad. The very same argument was made to the district court, which—permissibly, in my view—rejected it. *See* Order Denying Stay 2. With no policy before it for operating VOA in a new and streamlined manner, the court had nothing but the *status quo ante* against which to tailor its order.

Fourth, the preliminary injunction, as the district court explained, "is a stopgap measure . . . intended to maintain a status quo." Order Denying Stay 5 (citation omitted). Defendants assert in their briefing to us that the challenged relief is unnecessary because they have started to bring back "some" VOA employees. Gov't En Banc Resp. 7-8. But they have made no such factual showing. And, unless the Court of Appeals is ready to assume the role of the district courts, we should not decide such questions in advance of presentation to and decision by the district judge.

In view of all the district court did to support and tailor the relief it granted, I would not have stayed prong 1 of the district court's preliminary injunction. That said, *en banc* review is not

5

a mere error-correction mechanism. And, in any event, this court has not limited the district court's remedial options going forward. The district judge retains the power to require the agency's compliance with its statutory obligations. *See Nat'l Ass'n of Regul. Util. Comm'rs v. U.S. Dep't of Energy*, 680 F.3d 819, 820 (D.C. Cir. 2012), *and* 736 F.3d 517, 520-21 (D.C. Cir. 2013). And he has authority to modify the preliminary injunction as circumstances develop, even while the appeal of the preliminary injunction is pending. FED. R. CIV. P. 62(d). I have confidence that Judge Lamberth can and will afford fitting relief so that defendants meet their acknowledged obligation to ensure that VOA operates consistently with the International Broadcasting Act, including 22 U.S.C. § 6202 and 6204(b).

Because the government has repeatedly emphasized its broad discretion to determine what levels of staffing are necessary at VOA, I add a note of caution. While the agency does have discretion regarding how it discharges its statutory responsibilities, that discretion is neither boundless nor shielded from judicial review and remediation. It is a basic rule of our constitutional system that "the President may not decline to follow a statutory mandate or prohibition simply because of policy objections." *In re Aiken Cnty.*, 725 F.3d 255, 259 (D.C. Cir. 2013) (Kavanaugh, J.). The courts bring their full authority to bear in reviewing claims that executive actors have "disregard[ed] . . . statutory obligations that apply to the Executive Branch" or refused "to follow a law imposing a mandate or prohibition on the Executive Branch." *Id.* at 266. Nothing in the action of the *en banc* court changes that.