**ORAL ARGUMENT SCHEDULED FOR SEPTEMBER 22, 2025**

**Nos. 25-5144, 25-5145, 25-5150, 25-5151**

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

PATSY WIDAKUSWARA, ET AL.,
Plaintiffs-Appellees,
v.
KARI LAKE, IN HER OFFICIAL CAPACITY AS SENIOR ADVISOR TO THE
ACTING CEO OF THE U.S. AGENCY FOR GLOBAL MEDIA, ET AL.,
Defendants-Appellants,

---

MICHAEL ABRAMOWITZ, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF
VOICE OF AMERICA, ET AL.,
Plaintiffs-Appellees,
v.
KARI LAKE, IN HER OFFICIAL CAPACITY AS SENIOR ADVISOR TO THE
ACTING CEO OF THE U.S. AGENCY FOR GLOBAL MEDIA, ET AL.,
Defendants-Appellants,

---

MIDDLE EAST BROADCASTING NETWORKS, INC.,
Plaintiff-Appellee,
v.
UNITED STATES OF AMERICA, ET AL.,
Defendants-Appellants,

---

RADIO FREE ASIA,
Plaintiff-Appellee,
v.
UNITED STATES OF AMERICA, ET AL.,
Defendants-Appellants,

---

On Appeals from the United States District Court for the District of Columbia
Nos. 25-cv-1015, 25-cv-887, 25-cv-966, 25-cv-907 (Hon. Royce C. Lamberth)

---

## APPELLEES' BRIEF REGARDING RESTORATION OF EMPLOYEES AND CONTRACTORS

---

Counsel for Plaintiffs-Appellees in *Widakuswara* and *Abramowitz* are listed on
signature pages

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

**A.     Parties and Amici**

All parties, intervenors, and amici appearing before the district court and in this Court are listed in the Brief for Defendants-Appellants.

**B.     Rulings Under Review**

References to the rulings at issue appear in the Brief for Defendants-Appellants.

**C.     Related Cases**

These cases have not previously been before this Court.  There are two related cases currently pending in the United States District Court for the District of Columbia or on appeal.  *See RFE/RL, Inc. v. Lake*, No. 25-cv-799 (D.D.C.), *appeal docketed*, No. 25-5158 (D.C. Cir.); *Open Tech. Fund v. Lake*, No. 25-cv-840 (D.D.C.).

Dated:  July 15, 2025                                    _____/s/_____
                                                                                        Daniel Eisenberg

i

## RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Plaintiffs-Appellees Reporters Sans Frontières ("RSF"), Reporters Without Borders, Inc.; American Federation of State, County and Municipal Employees ("AFSCME"); American Federation of Government Employees ("AFGE"); American Foreign Service Association ("AFSA"); and The NewsGuild-CWA ("TNG-CWA") make the following disclosures:

Plaintiff-Appellee Reporters Without Borders, Inc. is a 501(c)(3) non-profit organization headquartered in Washington, D.C. and is the United States affiliate of Plaintiff-Appellee Reporters Sans Frontières, which is headquartered in Paris, France.

Plaintiff-Appellee AFSCME is a national labor organization and unincorporated membership association headquartered in Washington, D.C. AFSCME is the largest trade union of public employees in the United States.

Plaintiff-Appellee AFGE is a labor organization and unincorporated association headquartered in Washington, D.C. AFGE is the largest federal employee union.

Plaintiff AFSA is a professional association and labor organization headquartered in Washington, D.C. AFSA is the sole labor organization for the United States Foreign Service.

Plaintiff TNG-CWA is a labor union representing more than 27,000 employees. It is the largest labor union representing journalists and media workers in North America.

No Plaintiff-Appellee has a parent corporation, and no publicly held company owns 10% or more of any Plaintiff-Appellee's stock

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................1

STATEMENT OF THE CASE.................................................................2

    I.    Statutory Background................................................................2

    II.    Factual Background..................................................................3

    III.    Procedural Background ...........................................................5

ARGUMENT SUMMARY ......................................................................7

STANDARD OF REVIEW .....................................................................9

ARGUMENT ........................................................................................10

    I.    Plaintiffs Are Likely to Succeed on the Merits of Their Claims. .......11

        A.    Plaintiffs Have Challenged Actions Subject to APA Review. .11

            i.    Defendants' Actions to Implement a Categorical Policy Are Discrete and Final Actions. ..........................11

            ii.    Defendants' Dismantling of USAGM is Not Committed to Agency Discretion. ....................................................16

        B.    Plaintiff's Claims Are Not Channeled to Administrative Agencies. ...................................................................................19

        C.    Defendants' Remaining Personnel-Action Arguments Are Meritless. .................................................................................26

    II.    Plaintiffs Have Established Irreparable Harm.....................................29

    III.    The Balance of the Equities and Public Interest Favor Plaintiffs ......33

CONCLUSION .....................................................................................34

# TABLE OF AUTHORITIES

## Cases

*Aiken Cnty.*,
    725 F.3d 255 (D.C. Cir. 2013)................................................................. 18, 34

*Am. Fed'n of Gov't Emps. v. Trump*,
    929 F.3d 748 (D.C. Cir. 2019)....................................................................21

*Am. Fed'n of Gov't Emps. v. Trump*,
    No. 25-3293, 2025 WL 1541714 (9th Cir. May 30, 2025) ..........................21

*Armour & Co. v. Freeman*,
    304 F.2d 404 (D.C. Cir. 1962)....................................................................31

*Ashcroft v. ACLU*,
    542 U.S. 656 (2004)....................................................................................10

*Atlas Air, Inc. v. Int'l Bhd. of Teamsters*,
    280 F. Supp. 3d 59 (D.D.C. 2017)...............................................................31

*Atlas Air, Inc. v. Int'l Bhd. of Teamsters*,
    928 F.3d 1102 (D.C. Cir. 2019)..................................................................31

*Aviel v. Gor*,
    No. 25-5105, 2025 WL 1600446 (D.C. Cir. June 5, 2025)..........................27

*Awad v. Obama*,
    608 F.3d 1 (D.C. Cir. 2010).........................................................................9

*Axon Enter. v. Fed. Trade Commn.*,
    598 U.S. 175 (2023)....................................................................................22

*Beacon Assocs., Inc. v. Apprio, Inc.*,
    308 F. Supp. 3d 277 (D.D.C. 2018).............................................................31

*Bennett v. Spear*,
    520 U.S. 154 (1997)....................................................................................11

*Block v. Community Nutrition Institute*,
    467 U.S. 340 (1984)....................................................................................23

*Bonds v. Heyman*,
    950 F. Supp. 1202 (D.D.C. 1997)...................................................30

*Bowen v. Mich. Acad. of Fam. Physicians*,
    476 U.S. 667 (1986).......................................................................11

*California v. Azar*,
    911 F.3d 558 (9th Cir. 2018) .........................................................32

*Carr v. Saul*,
    593 U.S. 83 (2021)..........................................................................22

*Cody v. Cox*,
    509 F.3d 606 (D.C. Cir. 2007)............................................... 17, 18

*Dellinger v. Bessent*,
    768 F. Supp. 3d 33 (D.D.C. 2025)..................................................26

*Drake v. F.A.A.*,
    291 F.3d 59 (D.C. Cir. 2002)................................................. 16, 17

*Elgin v. Dep't of Treasury*,
    567 U.S. 1 (2012)................................................................. 20, 23

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010).......................................................................20

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
    460 F.3d 13 (D.C. Cir. 2006)..........................................................15

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006).........................................................................9

*Gordon v. Holder*,
    721 F.3d 638 (D.C. Cir. 2013)............................................... 10, 20

*Grundmann v. Trump*,
    770 F. Supp. 3d 166 (D.D.C. 2025)....................................... 20, 26

*Harris v. Bessent*,
    No. 25-5037, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025)...........27

*Hisp. Affs. Project v. Acosta*,
    901 F.3d 378 (D.C. Cir. 2018)........................................................13

*Hi-Tech Furnace Sys., Inc. v. F.C.C.*,
    224 F.3d 781 (D.C. Cir. 2000)........................................................17

*Hubbard v. U.S. E.P.A. Adm'r*,
    809 F.2d 1 (D.C. Cir. 1986)...........................................................27

*Huisha-Huisha v. Mayorkas*,
    27 F.4th 718 (D.C. Cir. 2022)...........................................................9

*Indep. Equip. Dealers Ass'n v. E.P.A.*,
    372 F.3d 420 (D.C. Cir. 2004)........................................................12

*J.D. v. Azar*,
    925 F.3d. 1291 (D.C. Cir. 2019)......................................................29

*Lackey v. Stinnie*,
    145 S. Ct. 659 (2025)........................................................................9

*League of Women Voters v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016)............................................... 8, 30, 33

*Leedom v. Kyne*,
    358 U.S. 184 (1958)........................................................................26

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990)..................................................... 12, 14, 15

*Maryland v. Corp. for Nat'l & Cmty. Serv.*,
    Civ. No. DLB-25-1363, 2025 WL 1585051 (D. Md. June 5, 2025).............15

*Maryland v. United States Department of Agriculture*,
    No. 25-1248, 2025 WL 1073657 (4th Cir. Apr. 9, 2025) ...........................23

*Massachusetts v. Kennedy*,
    Civ. Action No. 25-10814-WGY, 2025 WL 1371785
    (D. Mass. May 12, 2025).................................................................15

*Mount Healthy City School Dist. Bd. of Educ. v. Doyle*,
    429 U.S. 274 (1977)........................................................................27

vii

*Nat'l Ass'n of Immigr. Judges v. Owen*,
    139 F.4th 293 (4th Cir. 2025) ..................................................... 19, 21, 24, 26

*New York v. Trump*,
    133 F.4th 51 (1st Cir. 2025) ........................................................15

*Nken v. Holder*,
    556 U.S. 418 (2009).....................................................................33

*Norton v. Southern Utah Wilderness Alliance*,
    542 U.S. 55 (2004).......................................................................15

*NTE Conn., LLC*,
    26 F.4th 980 (D.C. Cir. 2022).....................................................32

*Nyunt v. Chairman, Broad. Bd. of Governors*,
    589 F.3d 445 (D.C. Cir. 2009).....................................................26

*Oceana, Inc. v. Locke*,
    670 F.3d 1238 (D.C. Cir. 2011)...................................................14

*Reuber v. United States*,
    750 F.2d 1039 (D.C. Cir. 1984)...................................................27

*Rhode Island v. Trump*,
    C.A. No. 1:25-cv-128-JJM-LDA, 2025 WL 1303868
    (D.R.I. May 6, 2025) ...................................................................15

*Risteen v. Youth For Understanding, Inc.*,
    245 F. Supp. 2d 1 (D.D.C. 2002)................................................32

*Robbins v. Reagan*,
    780 F.2d 37 (D.C. Cir. 1985).......................................................18

*Sampson v. Murray*,
    415 U.S. 61 (1974)......................................................... 27, 28, 30

*Sec'y of Labor v. Twentymile Coal Co.*,
    456 F.3d 151 (D.C. Cir. 2006).....................................................18

*Sierra Club v. Jackson*,
    648 F.3d 848 (D.C. Cir. 2011).....................................................18

*Singh v. Berger*,
    56 F.4th 88 (D.C. Cir. 2022) ............................................................9

*Small v. Avanti Health Sys., LLC*,
    661 F.3d 1180 (9th Cir. 2011) .......................................................32

*Somerville Public Schs. v. McMahon*,
    139 F.4th 63 (1st Cir. 2025) ..........................................................23

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994)........................................................................20

*Trump v. CASA, Inc.*, -- S. Ct. --,
    2025 WL 1773631 (2025) ...................................................... 11, 27

*Trump v. Int'l Refugee Assistance Project*,
    582 U.S. 571 (2017)..........................................................................9

*Trump v. Wilcox*,
    145 S. Ct. 1415 (2025)....................................................................25

*United States v. Fausto*,
    484 U.S. 439 (1988)................................................................ 23, 25

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981)..........................................................................9

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
    435 U.S. 519 (1978)........................................................................17

*Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*,
    14 F.3d 186 (4th Cir. 2013) ...........................................................13

*Vitarelli v. Seaton*,
    359 U.S. 535 (1959)........................................................................27

*W. Watersheds Project v. Haaland*,
    850 F. App'x 14 (D.C. Cir. 2021) ..................................................13

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)............................................................................33

*Wis. Gas Co. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985) ............................................................... 29, 32

*Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*,
    C.A. No. 1:25-cv-00097-MSM-PAS, 2025 WL 1116157
    (D.R.I. Apr. 15, 2025) ................................................................................ 15

**Statutes**

22 U.S.C. § 1465 ................................................................................................ 2

22 U.S.C. § 6202 ..................................................................................... 2, 3, 30

22 U.S.C. § 6203 ................................................................................................ 2

22 U.S.C. § 6204 ................................................................................................ 2

5 U.S.C. § 551 ................................................................................................. 12

5 U.S.C. § 701 ................................................................................................. 17

5 U.S.C. § 705 ................................................................................................. 27

5 U.S.C. § 706 ............................................................................................ 11, 27

5 U.S.C. § 1202 ............................................................................................... 25

5 U.S.C. § 1211 ......................................................................................... 20, 25

5 U.S.C. § 1212 ............................................................................................... 20

5 U.S.C. § 1213 ............................................................................................... 20

5 U.S.C. § 1214 ............................................................................................... 20

5 U.S.C. § 7104 ............................................................................................... 25

5 U.S.C. § 7105 ............................................................................................... 24

5 U.S.C. § 7117 ............................................................................................... 24

5 U.S.C. § 7118 ............................................................................................... 24

5 U.S.C. § 7703 ......................................................................................... 21, 25

**Other Authorities**

Appropriations Act of 2024, Pub. L. No. 118-47, 138 Stat. 460, 735 (2024) ........... 3

Explanatory Statement Submitted by Ms. Granger, Chair of the House Committee on Appropriations, Regarding H.R. 2882, 170 Cong. Rec. H1501, H2089 (Mar. 22, 2024) ................................................................................................. 3

Full-Year Continuing Appropriations and Extensions Act, Pub. L. No. 119-4 § 1101 (2025) ........................................................................................................... 3

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| Administrative Procedure Act | APA |
| American Federation of Government Employees | AFGE |
| American Federation of State, County, and Municipal Employees | AFSCME |
| Civil Service Reform Act | CSRA |
| Federal Labor Relations Authority | FLRA |
| International Broadcasting Act | IBA |
| Office of Special Counsel | OSC |
| Merit Systems Protection Board | MSPB |
| Personal service contractors | PSCs |
| Reporters Sans Frontières, Reporters Without Borders, Inc. | RSF |
| The NewsGuild-CWA | TNG-CWA |
| United States Agency for Global Media | USAGM |
| Voice of America | VOA |

**INTRODUCTION**

Plaintiffs are a coalition of parties, each irreparably harmed by the United States Agency for Global Media's ("USAGM") unlawful decision to dismantle itself and cease nearly all its statutorily mandated duties.

The *Widakuswara* Plaintiffs are individual journalists; their fellow employees; the labor unions that represent them; and Voice of America ("VOA") audience members, including journalist members of Reporters Sans Frontières, Reporters Without Borders, Inc. ("RSF"), and The NewsGuild-CWA ("TNG-CWA").[1]

The *Abramowitz* Plaintiffs are VOA director Michael Abramowitz and personal service contractors ("PSCs") Anthony LaBruto and J. Doe 2.

Upon Plaintiffs' strong showing of a likelihood of success on the merits and impending irreparable harms, and after balancing the equities, the district court entered a three-part injunction vacating USAGM's unlawful conduct and salvaging its essential components. The result was a limited but effective order, returning the parties to the status quo during litigation, but disavowing any interference with the agency's lawful prerogatives. Because the district court's factual findings and legal conclusions were supported by the evidence and law, and because the court's

---

[1] TNG-CWA also represents staff of USAGM network grantee Radio Free Asia, as is discussed in an accompanying brief.

1

injunction was well within its discretion and the bounds of Administrative

Procedure Act ("APA") remedies, this Court should affirm.

## STATEMENT OF THE CASE

### I.      Statutory Background

USAGM is a Congressionally established, independent agency. 22 U.S.C.

§ 6203(a). It houses two broadcast entities: VOA and the Office of Cuba

Broadcasting. 22 U.S.C. §§ 1465b, 6202(c). It also funds statutory grantees.[2]

USAGM is governed by broadcasting standards and principles, including

that U.S. international broadcasting "shall be designed so as to effectively reach a

significant audience," "shall include news which is consistently reliable and

authoritative, accurate, objective, and comprehensive," and shall enjoy editorial

independence. 22 U.S.C. §§ 6202(a)(7), (b)(1), 6204(b).

VOA is an integral part of USAGM. Launched during World War II, its

mission was simple but powerful: counter Nazi propaganda through truthful,

impartial reporting delivered to German citizens who lived under the Nazi regime.

JA313. By 2025, VOA became an international model for free press, reporting in

49 languages to a weekly global audience of 362 million. It employed

approximately 1,300 employees, including at least 1,000 journalists, and more than

500 PSCs. JA312–13. Its work is governed by VOA's charter, which defines the

---

[2] The agency-grantee relationship is addressed in the accompanying brief.

network's mission: to "win the attention and respect of listeners." 22 U.S.C.

§ 6202(c). In service of that mission, Congress dictated that "VOA will serve as a

consistently reliable and authoritative source of news." *Id*. § 6202(c)(1).

For Fiscal Year 2025, Congress appropriated $875 million to USAGM, $260

million of which must be spent by VOA. *See* Further Consolidated Appropriations

Act of 2024, Pub. L. No. 118-47, 138 Stat. 460, 735 (2024) ("2024 Appropriations

Act"); Full-Year Continuing Appropriations and Extensions Act, Pub. L. No. 119-

4 § 1101 (2025); Explanatory Statement Submitted by Ms. Granger, Chair of the

House Committee on Appropriations, Regarding H.R. 2882, 170 Cong. Rec.

H1501, H2089 (Mar. 22, 2024). Congress forbade USAGM from reprogramming

more than five percent of VOA's budget and from suspending any "program" or

downsizing any "offices" without congressional notification. 138 Stat. 735, 766.

## II.    Factual Background

On March 14, 2025, hours before signing into law Congress's renewed

appropriations to USAGM, the White House called for USAGM to reduce its

"statutory functions and associated personnel to the minimum presence and

function required by law." Exec. Order No. 14238, JA81, 84–85.

The next day, VOA stopped all broadcasting activities for the first time in 83

years. JA113, 317. USAGM placed 1,042 out of its 1,147 full-time employees on

administrative leave. JA72–73. It instructed the radio broadcast technicians, who

are required to be on-site 24/7 to keep VOA broadcasts running, to turn the programming off and leave the building. JA112. And it cancelled its grant agreements with its statutory grantees. JA137. Defendant Kari Lake, recently named "senior adviser" to USAGM, issued a statement labeling staff "terrorist sympathizers and/or supporters," calling the agency "a giant rot," and declaring it "not salvageable." JA88.

On March 16, USAGM terminated its 598 PSCs, effective March 31, JA72,[3] including many who come from authoritarian countries with permission to work at USAGM through J-1 visas. Those visas expire 30 days after termination of employment, forcing many PSCs to return home to countries where they face persecution. JA204–208, 319.

On March 17, USAGM instructed its foreign service employees, including members of Plaintiff American Foreign Service Association, to shut down all transmitters and to place all locally employed staff on administrative leave. JA168, 317.

Then on March 25, USAGM sent reduction-in-force notices to the two unions representing domestic USAGM staff: Local 1418 of the American Federation of State, County, and Municipal Employees ("AFSCME") and Local

---

[3] Defendants say they "reinstated" all PSCs "shortly" after terminating them, Defs. Br. at 10, but do not disclose that they did so because of the temporary restraining order entered on March 28. JA293–295.

1812 of the American Federation of Government Employees ("AFGE"). USAGM

intended to eliminate the entire AFSCME-represented bargaining unit of radio

broadcast technicians, without whom VOA cannot broadcast, JA222–225, and to

terminate an additional 594 AFGE-represented VOA employees, *see* JA232–236.

## III.    Procedural Background

On March 24, 2025, the *Widakuswara* Plaintiffs sued in the Southern

District of New York and sought emergency relief to halt and reverse the agency's

dismantling. On March 26, the *Abramowitz* Plaintiffs sought the same relief limited

to VOA in the District Court for the District of Columbia (D.D.C.). On March 28,

*Widakuswara* Plaintiffs secured a temporary restraining order pausing USAGM's

unlawful conduct. *See* Supp. App'x. On April 4, at Defendants' request, the

*Widakuswara* case was transferred to D.D.C. on April 4 and assigned to Judge

Lamberth, related to *Abramowitz*.

On April 22, the district court granted Plaintiffs' motions for a preliminary

injunction. JA38, JA301. The court found the "blanket placement of employees on

administrative leave, termination of entire bargaining units of employees, [and]

termination of PSCs . . . are . . . discrete, final agency actions subject to judicial

review." JA24–25. After finding jurisdiction, the court explained that the

Defendants' actions were likely arbitrary and capricious and lacked "any analysis

whatsoever." JA25. The court also held Defendants' actions were "not in

accordance with" statutory and constitutional law. JA28–30. Finally, the court found that the Plaintiffs demonstrated irreparable harm and that the balance of equities and public interest favored a preliminary injunction. JA31–35.

Part (1) of the preliminary injunction, which is the subject of Defendants' appeal addressed in this brief, requires that Defendants "take all necessary steps to return USAGM employees and contractors to their status prior to the March 14, 2025, Executive Order . . . including by restoring all USAGM employees and personal service contractors, who were placed on leave or terminated, to their status prior to March 14, 2025." JA36.

On April 24, Defendants appealed and concurrently moved for a partial stay in the district court of its preliminary injunction. In the motion to stay, Defendants argued that the district court's preliminary injunction hamstrung the agency's personnel management. JA302. The district court denied Defendants' motion and clarified that its order "does not prevent USAGM from executing personnel decisions for reasons unrelated to the Executive Order, such as 'misconduct, performance issues or security violations.'" *Id.*

Defendants simultaneously moved for a partial stay pending appeal in this Court, which a divided motions panel granted on May 3, 2025. JA457. Judge Pillard dissented.

Plaintiffs sought *en banc* review of the motions panel's decision, which the Court denied. JA514; JA516. Chief Judge Srinivasan issued a separate statement, joined by six members of the court, in which he clarified that the *en banc* denial "should not be understood to accept or treat with the government's assertion" that "the district court lacks any authority . . . 'to order personnel actions.'" JA524. Writing for herself, Judge Pillard explained that prong (1) of the preliminary injunction "was well tailored to the defendants' arbitrary and unlawful action," but concurred in the denial of *en banc* review because it "is not a mere error-correction mechanism." JA527–529.

## ARGUMENT SUMMARY

Confronted with the district court's findings that Defendants acted arbitrarily and capriciously and contrary to multiple federal statutes and the Constitution, Defendants make no effort to vindicate the legality of their conduct. Instead, they argue that their actions evade judicial review. The district court rejected those arguments, and this Court should as well.

*First*, the APA's presumption of judicial review applies with full force to this case, which challenges Defendants' discrete, final policy, albeit with far-ranging effects, to dismantle USAGM, including VOA.

7

*Second*, part (1) of the district court's preliminary injunction was narrowly tailored to undoing USAGM's unlawful conduct, leaving untouched the agency's unrelated staffing prerogatives.

*Third*, administrative channeling did not strip the district court's jurisdiction because the Civil Service Reform Act ("CSRA") has no application to the types of claims in this case; is inapplicable to third-party claims; and the assumptions on which the argument rests have been entirely undermined by recent events.

*Fourth*, Defendants' claim that "reinstatement is not an available remedy under the APA" is inapposite, given that the district court did not order reinstatement and given that, in any event, this Court's precedent says otherwise.

Because Defendants' efforts to thwart judicial review are unpersuasive, and given their lack of defense on the merits, there is no basis to disturb the district court's finding that Plaintiffs were likely to succeed.

Defendants' glancing treatment of Plaintiffs' irreparable harm ignores the record's myriad compelling harms, all of which arise from Defendants' unlawful actions, one component of which was their mass removal of staff.

Finally, the equities tip decisively in Plaintiff's favor, given the public's "interest in having governmental agencies abide by" the law. *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

8

## STANDARD OF REVIEW

A preliminary injunction is meant to return the parties to "the last uncontested status which preceded the pending controversy." *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022). It is a "stopgap measure" that does not "conclusively resolve legal disputes." *Singh v. Berger*, 56 F.4th 88, 95 (D.C. Cir. 2022) (first quotation); *Lackey v. Stinnie*, 145 S. Ct. 659, 667 (2025) (second quotation, cleaned up). District courts are asked to forecast likely success on the merits and balance equities "on the basis of procedures that are less formal and evidence that is less complete" than at trial. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Accordingly, "[c]rafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579 (2017).

The standard of review accounts for these considerations. Factual findings and inferences, including those based on documentary evidence, are reviewed "for clear error." *Awad v. Obama*, 608 F.3d 1, 6–7 (D.C. Cir. 2010). The district court's "ultimate decision to issue [a] preliminary injunction is reviewed for abuse of discretion." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 428 (2006). Legal conclusions are reviewed *de novo*, *id*., but where the district court reasonably resolves a close question of law, this Court must keep "the

9

preliminary injunction intact," leaving for a later stage definitive resolution of novel and difficult questions of law. *Gordon v. Holder*, 721 F.3d 638, 644 (D.C. Cir. 2013); *see Ashcroft v. ACLU*, 542 U.S. 656, 664 (2004).

## ARGUMENT

Upon finding that Defendants violated the APA by taking a series of concerted, close-in-time actions to dismantle USAGM, the district court crafted a preliminary injunction meant to restore the parties to their pre-dispute status quo and preserve the possibility of full relief at the end of litigation.

The district court's factual finding—that "this case is not simply a collection of personnel disputes," and "not simply an employment dispute," but rather a case about an agency's attempt to dismantle itself, JA21–22—is firmly grounded in the record. Defendants' "personnel actions" were taken en masse, in service of an overarching scheme to dismantle the agency, without individualized assessment or regard for performance, merit, or misconduct. *See* JA100 (administrative leave placement "is not being done for any disciplinary purpose"); JA225 (attributing RIF notices solely to executive order); JA236 (same); JA73–74 (same); JA279–280 (same).

And the court's injunction, including part (1), was an appropriate exercise of equitable discretion. It was "tailored to undoing the agency's unlawful actions" and "returning to the pre-March 14 status quo," while making clear that Defendants

could still "execut[e] personnel decisions for reasons unrelated to the Executive

Order," JA302; *Trump v. CASA, Inc.*, -- S. Ct. --, 2025 WL 1773631, at *19 (2025)

(Kavanaugh, J. concurring) (courts may "preliminarily 'set aside'" unlawful

agency action (quoting 5 U.S.C. § 706(2)).

Defendants do not attempt to demonstrate error, let alone clear error, in the

district court's factual finding, and they do not defend their actions on the merits.

Instead, they argue the district court abused its discretion in crafting the injunction.

Each of Defendants' objections to the district court's order is flawed; this Court

should affirm.

## I.       Plaintiffs Are Likely to Succeed on the Merits of Their Claims.

### A.       Plaintiffs have challenged actions subject to APA review.

The APA's presumption of reviewability applies with full force to Defendants'

discrete and final actions to implement a categorical policy not within the agency's

discretion. Defendants' contentions otherwise are meritless.

#### i.       Defendants' actions to implement a categorical policy are discrete and final actions.

The APA carries a "strong presumption" of judicial review of administrative

action. *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986). To be

reviewable, agency action must be final, meaning that it "mark[s] the

consummation of the agency's decisionmaking process," and determines "rights or

obligations." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal quotation marks

omitted). And it must be discrete, directed "against some particular 'agency action' that causes [the plaintiff] harm" rather than "seek[ing] *wholesale* improvement of [a] program." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).

But "the term 'agency action' undoubtedly has a broad sweep." *Indep. Equip. Dealers Ass'n v. E.P.A.*, 372 F.3d 420, 427 (D.C. Cir. 2004) (explaining that the hallmark of final agency action is whether the action has a "concrete impact"). It sweeps in "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). And these types of actions are themselves capacious; an "order," for example, "means the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing." *Id.* § 551(6). These broad statutory definitions together with the presumption of review mean that "[i]f there is in fact some specific order or regulation, applying some particular measure across the board . . . and if that order or regulation is final . . . it can of course be challenged under the APA by a person adversely affected." *Lujan*, 497 U.S. at 890 n.2.

Plaintiffs have challenged discrete and final agency action here: Defendants' discrete policy to dismantle USAGM, including VOA. As the district court found, this case concerns "a series of actions purportedly in furtherance of" Defendants'

own apparent plan to implement an executive order that left USAGM silenced, not reordered, contrary to applicable law. JA5, 81, 88.

The agency's execution of its plan occurred in quick succession between March 15 and 25, halting only in the face of judicial authority. *See* Factual Background, *supra*. It thus "mark[s] the consummation of the agency's decisionmaking process" from "which rights or obligations have been determined," including, as will be discussed *infra*, the rights of its audience and staff. That the agency may have continued taking actions to implement its plan does not deprive the *policy itself*—which has been applied to the "slew of actions" the district court addressed—of finality. *See, e.g.*, *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 195 (4th Cir. 2013) (adoption project is final agency action, not the subsequent activities in carrying it out); *W. Watersheds Project v. Haaland*, 850 F. App'x 14, 15 (D.C. Cir. 2021) (similar).

Importantly, Plaintiffs' challenge "targets … an identified transgression of … statutory and regulatory language, not . . . an exercise of broad, unspecified discretion." *Hisp. Affs. Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018) (challenge to the "practice of habitually approving and extending H-2A visas for lengthy periods of time" was challenge to discrete, final action). Plaintiffs' APA claims point to mandatory statutory directives on the one hand, and the agency's disregard of those directives on the other, and ask the Court to mandate

13

compliance. This is a classic APA action. *See Oceana, Inc. v. Locke*, 670 F.3d 1238, 1243 (D.C. Cir. 2011).

For these reasons, Defendants' interpretation of the law and facts gets the analysis exactly backwards. Defendants claim that this is "a challenge to agency operations" that "change constantly and are dependent on facts on the ground." Appellant Br. at 39–40. True, Defendants have taken myriad actions to dismantle USAGM, including firing personnel or placing them on leave, cancelling contracts, and almost completely shutting down operational capacity. And true, multiple actions, as the district court found, must be unwound to restore the status quo. But these decisions were not made on individualized bases, and instead reflect the application of a categorical policy to dismantle USAGM. That policy and the actions to which it was applied are appropriately subject to review.

Such a challenge is distinct from seeking "*wholesale* improvement" of "classifications of public lands and developing land use plans." *Lujan*, 497 U.S. at 890–91. *Lujan* involved no "single [agency] order or regulation, or even . . . a completed universe of particular [] orders and regulations," but rather challenged the agency's "continuing (and thus constantly changing)" internal operations as applied across projects. *Id*. at 890; *see* JA478–79 (Pillard, J., distinguishing *Lujan*).

Similarly, *Norton v. Southern Utah Wilderness Alliance* involved a challenge to an agency's "land use plan" which merely stated "priorities" but "d[id] not . . .

14

prescribe" actions. 542 U.S. 55, 71 (2004). Referring to *Lujan*, the Court held that the APA's limitation on "discrete agency action precludes . . . broad programmatic attack[s]" on agency activities. *Id.* at 64. This Court applied the same principles in barring a challenge to a "budget initiative [that] reflects land use planning" and "sets broad goals and strategies," *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 21 (D.C. Cir. 2006).

Courts have repeatedly rejected the very arguments Defendants advance here when finding the rapid, categorical dismantling of government programs and agencies over the last five months appropriate for review under the APA. *See, e.g.*, *New York v. Trump*, 133 F.4th 51, 68 (1st Cir. 2025) ("categorical funding freezes without regard and contrary to legal authority" reviewable under APA); *Maryland v. Corp. for Nat'l & Cmty. Serv.*, Civ. No. DLB-25-1363, 2025 WL 1585051, at *13 (D. Md. June 5, 2025) (reviewing "[t]he decision to terminate grant funding and close over 1,000 AmeriCorps programs on the same day . . . and for the same reason").[4]

---

[4] *See also, e.g.*, *Rhode Island v. Trump*, C.A. No. 1:25-cv-128-JJM-LDA, 2025 WL 1303868, at *8 (D.R.I. May 6, 2025); *Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, C.A. No. 1:25-cv-00097-MSM-PAS, 2025 WL 1116157, at *11 (D.R.I. Apr. 15, 2025); *Massachusetts v. Kennedy*, Civ. Action No. 25-10814-WGY, 2025 WL 1371785, at *10 (D. Mass. May 12, 2025) (same).

### ii.    Defendants' dismantling of USAGM is not committed to agency discretion.

Defendants incorrectly describe the nature of this case and the agency actions under review when arguing that the preliminary injunction interferes with "[i]nternal staffing decisions" otherwise left to agency discretion. Appellant Br. at 43.

First, the district court expressly stated that its preliminary injunction was "tailored to undoing the agency's unlawful actions" and "returning to the pre-March 14 status quo," while making clear that Defendants could still "execut[e] personnel decisions for reasons unrelated to the Executive Order," JA302. Defendants' argument thus rests on a false premise.

Moreover, this case does not concern run-of-the-mill "[i]individual staffing decisions [that] reflect efforts to determine whether ongoing agency actions 'best fit[] the agency's overall policies.'" Appellant Br. at 44.  Instead, as explained above, it involves a plan to dismantle USAGM. Those actions and the policy they are meant to effectuate are plainly subject to review.

Given the APA's "basic presumption of judicial review," "[t]he exception for agency action committed to agency discretion by law is a very narrow one, reserved for those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Drake v. F.A.A.*, 291 F.3d 59, 70 (D.C. Cir. 2002) (first quotation, cleaned up); *Hi-Tech Furnace Sys., Inc. v. F.C.C.*, 224 F.3d

16

781, 788 (D.C. Cir. 2000) (second quotation, cleaned up).[5] To determine whether this narrow exception applies, courts consider "both the nature of the administrative action at issue"—essentially, whether it is a type of action "presumptively outside the bounds of judicial review"—and "the language and structure of the statute that supplies the applicable legal standards for reviewing that action." *Drake*, 291 F.3d at 70.

Defendants do not argue that this case fits into any of the "narrow categories" of agency action that does not enjoy the presumption of reviewability, such as declining to take an enforcement action. *See, e.g.*, *Cody v. Cox*, 509 F.3d 606, 610 (D.C. Cir. 2007). They instead invoke boilerplate language concerning an agency's traditional control over "methods [and] procedures" used to run an agency, Appellant Br. at 42 (quoting *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524–25 (1978)). But such micromanagement of an agency's internal procedures or enforcement decisions are not before this Court.

Here Defendants took affirmative actions—in the form of mass personnel actions, cancelling contracts, and shutting down operational capacity—to implement an identifiable and categorical policy to dismantle the agency contrary to the International Broadcasting Act ("IBA"), VOA's Charter, and relevant appropriations

---

[5] Defendants do not suggest that any "statutes preclude judicial review." 5 U.S.C. § 701(a)(1).

law. Defendants cannot avoid review by reframing their actions as "procedural" in nature, nor do they have discretion to essentially cease functioning altogether.

With this presumption in mind, there are meaningful standards against which to review Defendants' actions to implement an across-the-board policy to dismantle USAGM. To determine whether a statute provides "no meaningful standard," courts "consider . . . the language and structure of the statute," *Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011), as well as "formal and informal policy statements and regulations" *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 158–59 (D.C. Cir. 2006). Even when statutory language is "permissive and indeterminate," this Circuit has "regularly found" that agency actions are not committed to their discretion. *Cody*, 509 F.3d at 610 (collecting cases).

Here, the question is not the precise contours of how USAGM must run. It is whether the Defendants have discretion to implement a categorical policy to dismantle USAGM and to take actions to implement that policy. The IBA, VOA Charter, and relevant appropriations answer that question with a resounding no. *See In re Aiken Cnty.*, 725 F.3d 255, 259 (D.C. Cir. 2013). Indeed, even if this were a circumstance where "there are no clear statutory guidelines"—which it is not, *see supra* (discussion of statutory framework)—"courts often are still able to discern from the statutory scheme a congressional intention to pursue a general goal." *Robbins v. Reagan*, 780 F.2d 37, 45 (D.C. Cir. 1985). "[C]ourts have a clear role to

play in ensuring that an agency's practical implementation of its program is consistent with its own declared intentions and goals." *Id.* at 46. The statutory scheme here evinces Congress's intent that USAGM and VOA provide impactful broadcasting to significant audiences and regions across the globe, and that they meaningfully counter censorship and repression. With respect to this issue, the only question is whether the Defendants' actions to implement an across-the-board policy to dismantle the agency were, for example, arbitrary and capricious in light of these mandates. That is for a court, not the agency, to decide.

### B.    Plaintiff's claims are not channeled to administrative agencies.

Administrative channeling similarly poses no barrier to review. Defendants' argument that federal personnel disputes are channeled by the Civil Service Reform Act ("CSRA") (1) is inapplicable to the types of claims in this case; (2) is inapposite to third-party claims; and (3) does not hold considering the executive's recent actions.

The CSRA was enacted in 1978 to ensure fairness and impartiality in the federal government's relations with its career workforce. *See Nat'l Ass'n of Immigr. Judges v. Owen*, 139 F.4th 293, 306 (4th Cir. 2025) (citing S. Rep. 95-969, at 2–3). It created the Merit System Protection Board ("MSPB"), Office of Special Counsel ("OSC"), and the Federal Labor Relations Authority ("FLRA"), each of which plays a role in dispute resolution between federal employees or their

representatives and the government. *Id*. at 302; *Grundmann v. Trump*, 770 F. Supp. 3d 166, 170 (D.D.C. 2025); 5 U.S.C. §§ 1211–1214.

1. The Supreme Court's *Thunder Basin Coal Co. v. Reich,* 510 U.S. 200 (1994), decision (which Defendants ignore) guides analysis of whether Congress implicitly stripped the district court of its jurisdiction over the claims in this case and channeled their resolution through the CSRA's administrative bodies. *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 10 (2012). First, courts ask whether Congressional intent to "allocate[] initial review to an administrative body . . . is fairly discernible in the statutory scheme." *Thunder Basin*, 510 U.S. at 207 (quotation marks omitted). If so, courts then ask whether the specific claims at issue "are of the type Congress intended to be reviewed within this statutory structure." *Id*. at 212. If the claims are not of this type, then the district court has jurisdiction. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 490–91 (2010).

As the district court correctly found, applying *Thunder Basin*, the claims at issue are not "of the type Congress intended to be reviewed within th[e] statutory structure" because (a) denying district court jurisdiction would "foreclose all meaningful judicial review"; (b) the claims are "entirely collateral" to the CSRA; and (c) the claims fall "outside the agency's expertise." 510 U.S. at 212–13. That was reasonable legal analysis of a novel context. *See Gordon*, 721 F.3d at 644.

20

a. Denying district court jurisdiction would foreclose all meaningful judicial review. This is a case about reviving a Congressionally mandated independent agency. Judicial review under CSRA would come only after multiple layers of agency review, a process that could take years, particularly given that all three CSRA-administering agencies currently lack a quorum. *See infra* []; 5 U.S.C. § 7703 (judicial review provision in CSRA); *Owen*, 139 F.4th at 305 (suggesting lack of quorum could defeat inference of Congressional intent to channel). By that time, the dismantling of USAGM would be irreversible, rendering judicial review of Plaintiffs' core claims meaningless. *See* JA22 n.22; *Am. Fed'n of Gov't Emps. v. Trump*, No. 25-3293, 2025 WL 1541714, at *4–5 (9th Cir. May 30, 2025).[6] Moreover, Plaintiffs could not get the relief they seek—an order that USAGM resume broadcasting and refrain from dismantling the agency absent reasoned decision-making—through administrative channels. *Cf. Am. Fed'n of Gov't Emps. v. Trump*, 929 F.3d 748, 760 (D.C. Cir. 2019).

b. The issues in this case are collateral to CSRA review provisions. Unlike the cases Defendants rely on, this case does not challenge employment actions directed at specific employees: Plaintiffs "challenge the evisceration of their jobs only insofar as it is the means by which they challenge defendants'

---

[6] The injunction in *AFGE* was stayed on the merits. 2025 WL 1873449. The government argued the case was channeled, but the Supreme Court did not rule on that basis.

unlawfully halting the work of [VOA]." JA476–77 (Pillard, J., dissenting); *see also AFGE*, 2025 WL 1541714, at *3.

c. This case involves issues outside USAGM's expertise. Fundamental questions about an agency's prerogative to ignore Congressional mandates are decidedly not issues the relevant administrative bodies "customarily handle[]."*Axon Enter. v. Fed. Trade Commn.*, 598 U.S. 175, 186 (2023); *Carr v. Saul*, 593 U.S. 83, 92 (2021) ("[A]gency adjudications are generally ill suited to address structural constitutional challenges."). Plaintiffs have alleged the agency's actions, including its mass removal of staff, should be vacated not because the actions run afoul of civil service laws, but because they were taken pursuant to an overarching unlawful scheme that violates the APA, the First Amendment, and the separation of powers. There are therefore no threshold employment questions implicating agency expertise. *See AFGE*, 929 F.3d at 761; *Axon,* 598 U.S. at 906 (distinguishing *Elgin* on this basis).

2. The district court also correctly exercised jurisdiction over the claims brought by non-federal-employee plaintiffs who are nonetheless harmed by Defendants' mass firing of USAGM staff. Every court to have grappled with this question has rejected the notion, which Defendants advance here (at 31–34), that claims brought by third parties are barred if they touch on federal employment. *See AFGE*, 2025 WL 1541714, at *5; *Somerville Public Schs. v. McMahon*, 139 F.4th

63, 72 (1st Cir. 2025). Indeed, the Supreme Court was clear in *Elgin v. Department of Treasury*, 567 U.S. 1 (2012), that whether the CSRA is implicated at all turns on "the type of *employee* and adverse agency action at issue." *Id*. at 12, 15 (emphasis added).

Defendants invoke *United States v. Fausto*, 484 U.S. 439 (1988), but that case had to do with a federal employee's challenge to his suspension under the civil service laws. The unpublished order in *Maryland v. United States Department of Agriculture*, No. 25-1248, 2025 WL 1073657 (4th Cir. Apr. 9, 2025), is similarly unhelpful to Defendants because its jurisdictional holding is based on a Supreme Court order regarding standing, not channeling. Nor does *Block v. Community Nutrition Institute*, 467 U.S. 340 (1984) "hold, as the appellants contend, that a comprehensive statutory scheme authorizing review of an agency action by one category of plaintiffs always forecloses claims by other plaintiffs regardless of the nature of those claims." *Somerville*, 139 F.4th at 72 (rejecting government's identical argument).

Plaintiffs RSF and TNG-CWA, who represent journalists who report abroad and whose members are harmed as listeners by the mass firings because of their effect on USAGM programming, are therefore not channeled. JA140, 124–33, 296–97. Nor are AFSCME and AFGE channeled in their capacity as organizations. As the district court recognized, the public-sector unions sue on behalf of their

23

members, but also on behalf of themselves as organizations who stand to lose

significant bargaining power and member dues, and, in the case of AFSCME Local

1418, stand to be wiped out entirely should USAGM carry out its plan to terminate

all RBTs. These are not harms the FLRA, which reviews "issues relating to the

duty to bargain in good faith" and unfair labor practices, can resolve. 5 U.S.C.

§§ 7105(a)(2), 7117, 7118; JA21 n.20.[7]

Moreover, Does 3 and 4 in *Widakuswara* and LaBruto and Doe 2 in

*Abramowitz* are contractors with no recourse through the CSRA. Defendants argue

these Plaintiffs are channeled by the Contract Disputes Act. That analysis is

identical to the Tucker Act analysis, addressed in an accompanying brief. Like the

statutory grantees, these Plaintiffs find the source of their rights in statutory and

constitutional law, and their relief in equity. *See* JA21 n.19.

3. This case is not channeled for an additional reason Plaintiffs raised below

that was recently adopted by the Fourth Circuit. The President's firing, without

cause, of members of each CSRA administrative agency has collapsed any

implication of jurisdiction-stripping that may have been discernible from the

statutory scheme. *See Owen*, 139 F.4th at 304.

---

[7] The district court held that these were not irreparable harms. Plaintiffs disagree, as discussed *infra* Section II.

As discussed above, the CSRA's three administrative agencies carry out "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests" of federal employees with "the needs of sound and efficient administration." *United States v. Fausto*, 484 U.S. 439, 445 (1988). Congress created the agencies as wholly "independent of any control or direction by the President," S. Rep. No. 95-969, at 24 (1978), and thereby insulated from any appearance of bias that would attend the executive adjudicating its own employment disputes, *id*. at 6–7 (emphasizing need for "a strong and independent [MSPB] and Special Counsel"); *see also id*. at 7–8 (FLRA structure "will assure impartial adjudication of labor-management cases"). It therefore made the MSPB and FLRA members as well as the Special Counsel removable only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. §§ 1202(d), 1211(b), 7104(b); *see also* H. Rep. No. 95-1403 (July 31, 1978) (Congress rejected President's proposal that FLRA members "serve at the pleasure of the President"). These guarantees of independence and impartiality at the administrative stage are important because judicial review of the agencies' decisions is deferential. *See* 5 U.S.C.A. § 7703(c). Prejudice from a partial administrative tribunal will not necessarily be rooted out before the Federal Circuit.

But shortly after taking office, President Trump fired members of all three bodies without cause. *See Trump v. Wilcox*, 145 S. Ct. 1415 (2025); *Dellinger v.*

25

*Bessent*, 768 F. Supp. 3d 33, 37 (D.D.C. 2025); *Grundmann*, 770 F. Supp. 3d at 173. The remaining members, and those appointed in the future, are on notice that they face removal, at any time, including for impartial rulings that contradict the Administration. A "bedrock principle" of the CSRA—federal employees' guarantee of an independent adjudicator—is gone. *Owen*, 139 F.4th at 307. Any implication that Congress intended to channel fundamental challenges to executive overreach—to the extent it ever existed—is gone with it.

Finally, even if the Court finds that this case implicates CSRA jurisdiction-stripping, it should nonetheless affirm jurisdiction under *Leedom v. Kyne*, 358 U.S. 184 (1958), given Defendants' extraordinarily illegal conduct under unprecedented circumstances. *Cf. Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (*Leedom* jurisdiction did not apply where, unlike here, USAGM's misconduct was not "extreme").

In short, this is not a case suitable for agency adjudication.

**C.      Defendants' remaining personnel-action arguments are meritless.**

Defendants next argue that "reinstatement is not an available remedy under the APA." Defs. Br. at 34. This argument misses its mark on multiple fronts.

First, the district court did not order reinstatement. It temporarily enjoined Defendants from terminating employees and contractors in service of its authority to set aside unlawful agency action. *See* JA302. That is entirely appropriate relief

26

under the APA, which expressly empowers courts to "issue all necessary and appropriate" preliminary relief "to preserve status or rights" and instructs courts to "set aside" unlawful agency action. 5 U.S.C. §§ 705, 706(2); *CASA,* 2025 WL 1773631, at \*19, \*22 (2025) (Kavanaugh, J. concurring) (district courts may "preliminarily set[] aside" agency action under the APA).

Second, Defendants' string cite at pages 34–35 relies on cases having to do with the removal not of federal *employees*, but of state and federal *officers*.[8] But "[r]einstatement clearly is among those equitable remedies available to" a federal employee. *Hubbard v. U.S. E.P.A. Adm'r,* 809 F.2d 1, 11–12 (D.C. Cir. 1986) (citing *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977), and *Reuber v. United States*, 750 F.2d 1039, 1062 (D.C. Cir. 1984); *Id*. at 1067 (Bork, J., concurring)); *see Vitarelli v. Seaton*, 359 U.S. 535, 546 (1959) (ordering reinstatement of Department of Interior employee).

Third, Defendants argue that *Sampson v. Murray*, 415 U.S. 61 (1974), which confirms courts' authority to "grant interim injunctive relief to a discharged Government employee," *id*. at 63, imposes a heightened harm requirement before such relief can be granted. Again, this is not a "government personnel case," so

---

[8] Even in that context, this Court has rejected the government's argument on a stay posture. *See Aviel v. Gor*, No. 25-5105, 2025 WL 1600446, at \*2 (D.C. Cir. June 5, 2025) (discussing *Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at \*2 (D.C. Cir. Apr. 7, 2025) (en banc)).

27

*Sampson* has limited relevance. Even so, many of the premises animating the heightened showing required in *Sampson* are absent here. This case, about an agency's dismantling itself, falls outside the "wide[] latitude" afforded the government's "dispatch of its own internal affairs." *Id*. at 84. Moreover, Sampson challenged her removal only as violative of the civil service laws—not under the APA or Constitution. Accordingly, Sampson was simultaneously pursuing an administrative review scheme that expressly precluded the type of relief she sought in the district court. *Id*. at 83. The Court required a heightened showing to overcome, among other things, "the obviously disruptive effect which [the relief] was likely to have on the administrative process." *Id*. That is not the case here. But even so, as discussed *infra*, Section II, Plaintiffs have demonstrated compelling irreparable harm justifying the instant injunction.

Finally, Defendants implicitly contend that, because they have not appealed part (3) of the injunction (requiring Defendants to "restore VOA . . . programming such that USAGM fulfills its statutory mandate . . ."), part (1) is unnecessary to remediate their unlawful conduct. That undeveloped assertion runs contrary to the discretion accorded district courts in crafting an appropriate preliminary injunction. Moreover, the shuttering of USAGM for even a day, particularly without any reasoned basis, which resulted from the indiscriminate and extended placement of employees on leave, is legally intolerable, and so vacatur was the narrowest

28

effective remedy. *See J.D. v. Azar*, 925 F.3d. 1291, 1335 (D.C. Cir. 2019) (courts not required to "fashion narrower, ostensibly permissible policies from whole cloth"). That is particularly true because Defendants never suggested a narrower preliminary injunction in the district court. *Id.*

## II.    Plaintiffs Have Established Irreparable Harm.

The district court correctly found Plaintiffs faced imminent, irreparable harm absent an injunction.

Among other things, the district court found that USAGM was "dismantling [the] human infrastructure required to run USAGM [and] VOA." JA32. That dismantling created an existential threat to USAGM, destroying the credibility and respect it built over 80 years on the air and undermining the prospect that the agency could be propped back up and resume effective work in the long-term. JA32–33 (citing *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)); *see also* JA490–91. The court therefore halted that conduct as an essential component of returning the parties to the status quo and preserving the prospect of full relief at the end of litigation. Defendants' argument that the district court focused too much "on the continued functioning of the Agency" and not on specific harm that would arise absent "the personnel-related portion of its injunction" thus prioritizes the trees at the forest's expense. Even so, Plaintiffs face indisputable irreparable harm from the dissolution of their positions.

29

First, the government's dismantling of VOA unlawfully deprives Abramowitz of his statutory right and responsibility to direct and manage the agency. As Director of VOA, Abramowitz is expressly charged under 22 U.S.C. §§ 6202 and 6204 with fulfilling the agency's mission and overseeing its broadcasting activities. Defendants' actions—ceasing broadcasting for the first time in 83 years, placing almost all employees on administrative leave, terminating PSCs, cancelling stringer contracts, and obstructing agency operations, JA308–10, irreparably harms Abramowitz's ability to execute VOA's core mission. Because statutory duties and organizational leadership cannot be retroactively fulfilled, these harms are irreparable. *See Newby*, 838 F.3d at 9 (irreparable harm where action "unquestionably make[s] it more difficult" for the plaintiff to accomplish primary mission).

Second, all USAGM-employee Plaintiffs face the "genuinely extraordinary situation" of elimination of their positions and the destruction of their work and professional reputations. *See Sampson*, 415 U.S. at 92 n.68. Defendants intend to eliminate over a thousand positions at USAGM, a unique agency with a historical mission. It is "unlikely [affected employees] could ever find work approaching what [they] now do[]" because that work does not exist elsewhere. *Bonds v. Heyman*, 950 F. Supp. 1202, 1215 (D.D.C. 1997).

30

Compounding that injury, Defendants have labelled USAGM employees and their work "anti-American" and terrorist sympathizing. JA88, JA321. Courts have routinely recognized that damage to professional reputation and good will—particularly where it affects the ability to carry out one's duties—is irreparable. *See, e.g.*, *Atlas Air, Inc. v. Int'l Bhd. of Teamsters*, 280 F. Supp. 3d 59, 104 (D.D.C. 2017) (loss of trust and reputation from disrupted operations irreparable), *aff'd*, 928 F.3d 1102 (D.C. Cir. 2019). Defendants' statements—accusing VOA as being rife with fraud, anti-American, and a waste of taxpayer funds, without any basis—harms VOA's reputation as a non-partisan, objective news broadcasting network, and in turn harms the reputations of Plaintiffs as VOA employees. *See Beacon Assocs., Inc. v. Apprio, Inc.*, 308 F. Supp. 3d 277, 288 (D.D.C. 2018) (loss of institutional knowledge and professional reputation irreparable) (citing *Armour & Co. v. Freeman*, 304 F.2d 404, 406 (D.C. Cir. 1962) (damage to professional "good name" irreparable)); *see* JA176, JA182, JA189, JA194, JA199, JA321–22 (describing professional and reputational harm). This conduct has also strained longstanding relationships that VOA—under Abramowitz's stewardship—has cultivated with employees, partner organizations, and stakeholders globally. JA322.

Third, the loss of employment triggers further irreparable harm. *Widakuswara* Plaintiffs Does 3 and 4 faced the loss of their J-1 visas and removal

31

to countries where they face persecution for their work at USAGM. JA33, JA204–08. All USAGM employees will lose health insurance and wages and cannot obtain damages for such losses through this litigation. *See In re NTE Conn., LLC*, 26 F.4th 980, 990–91 (D.C. Cir. 2022) (financial injury irreparable where damages unavailable); *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (monetary loss irreparable in APA case); *see also Risteen v. Youth For Understanding, Inc.*, 245 F. Supp. 2d 1, 16 (D.D.C. 2002) (loss of health insurance can be irreparable). And as discussed above, they also lack recourse through administrative channels.

AFSCME and AFGE stand to lose most of their members, weakening their bargaining power and depriving them of money that, like employee wages, will not be returned at the end of litigation. JA222–25, 232–36; *see Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1192 (9th Cir. 2011) (loss of bargaining power and attendant benefits irreparable). AFSCME Local 1418 stands to be wiped out entirely. *See Wisconsin Gas Co*., 758 F.2d at 674 (existential threat to business is irreparable harm). And absent an injunction, both unions face irreparable harm via resources diverted to respond to USAGM's erratic and unreasoned actions, substantially hindering the unions' ability to perform their core function of advocating for fair working conditions. JA111–16; JA119–22; *see Newby*, 838 F.3d at 8–9.

32

Finally, members of Plaintiffs RSF and TNG-CWA are irreparably deprived of a vital source of news upon which they rely. JA33–34.

## III.    The Balance of the Equities and Public Interest Favor Plaintiffs.

The balance of the equities and the public interest merge where the government is the defendant, *see Nken v. Holder*, 556 U.S. 418, 435 (2009), and favor Plaintiffs because there is "no public interest in the perpetuation of unlawful agency action" and "substantial public interest in having governmental agencies abide by" the law.  *Newby*, 838 F.3d at 12 (cleaned up). Weighing the parties' "competing claims of injury" and the "effect on each party of the . . .  requested relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), the district court correctly concluded the equities favored Plaintiffs, who "put forward a laundry list of injuries that would occur absent injunctive relief," while Defendants' "only assert[ed] that injunctive relief would disrupt their ability to comply with the EO." JA34.

Gestures to "Executive Branch policy" or the Executive Order does not excuse Defendants' failure to abide by federal law. "It is a basic rule of our constitutional system that 'the President may not decline to follow a statutory mandate or prohibition simply because of policy objections.'" JA529 (Pillard, J.) (quoting *In re Aiken County*, 725 F.3d at 259). Alleged "harm to the public fisc" caused by restatement of employees, Br. at 66, also does not tip the balance of the

33

equities toward Defendants because "the government cannot complain of costs it imposes on itself through unlawful action." JA526–27 (citation omitted). The equities and public interest favor the injunction vacating USAGM's unlawful action and restoring the status quo.

## CONCLUSION

This Court should affirm the preliminary injunctions vacating USAGM's unlawful conduct.

Dated:  July 15, 2025

ZUCKERMAN SPAEDER LLP

_____/s/_____
William B. Schultz
Margaret M. Dotzel
Brian J. Beaton, Jr.
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
wschultz@zuckerman.com
mdotzel@zuckerman.com
bbeaton@zuckerman.com

*Counsel for Plaintiffs-Appellees*
*Michael Abramowitz, Anthony LaBruto,*
*and J Doe 2*

AMERICAN FEDERATION OF
STATE, COUNTY, AND MUNICIPAL
EMPLOYEES, AFL-CIO (AFSCME)

_____/s/_____
Teague Paterson
Matthew Blumin
Georgina Yeomans
1625 L Street, N.W.
Washington, D.C. 20036
(202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org
GYeomans@afscme.org

*Counsel for Plaintiff-Appellee*
*American Federation of State, County,*
*and Municipal Employees, AFL-CIO*
*(AFSCME)*

Respectfully submitted,

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

_____/s/_____
Andrew G. Celli, Jr.
Debra L. Greenberger
Daniel M. Eisenberg
Nick Bourland
One Rockefeller Plaza, 8th Floor
New York, New York 10020
(212) 763-5000
acelli@ecbawm.com
dgreenberger@ecbawm.com
deisenberg@ecbawm.com
nbourland@ecbawm.com

*Counsel for Plaintiffs-Appellees Patsy*
*Widakuswara, Jessica Jerreat, Kathryn*
*Neeper, John Doe 1, John Doe 2, John*
*Doe 3, John Doe 4, American Federation*
*of State, County and Municipal*
*Employees (AFSCME); American*
*Federation of Government Employees*
*(AFGE); American Foreign Service*
*Association (AFSA); and the NewsGuild-*
*CWA*

35

DEMOCRACY FORWARD
FOUNDATION

_____/s/_____

Kristin Bateman*
Robin F. Thurston
Skye L. Perryman
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
kbateman@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org

*Counsel for Plaintiffs-Appellees
American Federation of State, County
and Municipal Employees (AFSCME);
American Federation of Government
Employees (AFGE); American Foreign
Service Association (AFSA);the
NewsGuild-CWA*

*Admitted in California only;
practicing under the supervision of
District of Columbia Bar members

GOVERNMENT ACCOUNTABILITY
PROJECT

_____/s/_____

David Z. Seide
1612 K Street, NW
Washington, DC 20006
(202) 457-0034
davids@whistleblower.org

*Counsel for Plaintiffs-Appellees Patsy
Widakuswara, Jessica Jerreat, Kathryn
Neeper, John Doe 1, John Doe 2, John
Doe 3, and John Doe 4*

AMERICAN FOREIGN SERVICE
ASSOCIATION

_____/s/_____

Sharon Papp
Raeka Safai
2101 E Street, N.W.
Washington, D.C. 20037
(202) 338-4045
papp@afsa.org
safai@afsa.org

*Counsel for Plaintiff-Appellee American
Foreign Service Association (AFSA)*

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL-
CIO

_____/s/_____

Rushab Sanghvi
80 F. Street, NW
Washington, DC 20001
(202) 639-6424
SanghR@afge.org

*Counsel for Plaintiff-Appellee American
Federation of Government Employees,
AFL-CIO (AFGE)*

36

STATE DEMOCRACY DEFENDERS
FUND

_____/s/_____

Norman L. Eisen
Joshua Kolb
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
Norman@statedemocracydefenders.org
Joshua@statedemocracydefenders.org

*Counsel for Reporters Sans Frontières,*
*Reporters Without Borders, Inc.,*
*American Federation of State, County*
*and Municipal Employees (AFSCME);*
*and American Federation of*
*Government Employees (AFGE)*

MEDIA FREEDOM &
INFORMATION ACCESS CLINIC -
YALE LAW SCHOOL**

_____/s/_____

David A. Schulz
127 Wall Street
New Haven, CT 06520
tobin.raju@YLSClinics.org
David.schulz@YLSClinics.org

*Counsel for Plaintiffs-Appellees Patsy*
*Widakuswara, Jessica Jerreat, Kathryn*
*Neeper, and John Does 1-4*

** The views expressed herein do not
purport to represent the institutional
views of Yale Law School, if any.

37

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations set forth in this Court's Order of June 9, 2025, because it contains 7,500 words. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  July 15, 2025                              */s/*
                                          Daniel Eisenberg

38

## CERTIFICATE OF SERVICE

I certify that on July 15, 2025, a true and correct copy of this filing was filed with the Clerk for the United States Court of Appeals for the District of Columbia Circuit via the Court's electronic filing system, which will forward a copy to all counsel of record.

Dated: July 15, 2025            _____*/s/*_____

                                       Daniel Eisenberg